UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON JAMES MORROW,

                    Petitioner,                  Case Number 10-13572
                                                    Honorable Marianne O. Battani

v.

CINDI CURTIN,

                    Respondent.
_____/


**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

       This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. The court sentenced Petitioner to 20-to-30 years for the murder conviction and a consecutive two years for the firearm conviction. The petition will be denied because none of the seven claims raised by Petitioner have merit. The Court will also deny Petitioner a certificate of appealability and permission to proceed in forma pauperis on appeal.

Background

       This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

            Defendant was convicted of killing Ronald Guevara during a fight
     following an earlier altercation between defendant, Carlos Flemister and

Guevara as they played basketball. After the initial altercation, in which defendant and Flemister got the best of Guevara, Guevara and a group of men approached the covered porch of a house on which defendant, Flemister and others were standing, and a fight ensued. No one in Guevara's group was armed. During the fight, defendant pulled a gun from his waistband and fired a single, fatal shot into Guevara's forehead.

<u>People v. Morrow</u>, 2009 Mich. App. LEXIS 708, *1 (Mich. Ct. App. Mar. 26, 2009).

Following his conviction and sentence, Petitioner filed an appeal of right in the Michigan Court of Appeals.  His appointed appellate counsel filed a brief that raised three claims:

I. Was the evidence insufficient to support the conviction of second-degree murder and has Appellant been denied due process of law.

II. Was defense trial counsel constitutionally ineffective in failing to request a jury instruction on imperfect self-defense reducing second-degree murder to voluntary manslaughter and in failing to request a jury instruction that Appellant had no duty to retreat from the enclosed porch before using deadly force in self-defense.

III. Whether the trial court violated Appellant's due process rights by introducing twelve close-up photographs of the decedent's body where the danger of unfair prejudice due to the gruesomeness of the photograph substantially outweighed any probative value.

Petitioner also filed his own supplemental pro se brief that raised an additional four claims:

I. Defendant-appellant is entitled to a new trial, when the Prosecutor charged the appellant with second-degree murder in a case, when the appellant was entitled to a perfect self-defense.

II. Defendant-appellant is entitled to a new trial (a) when members of the jury began deliberating the case by speaking with the victim's family members, and (b) the trial judge failed to provide the jury with instruction for drug addict witness and co-conspirator witness.

III. The defendant was denied a fair trial when the prosecutor elicited testimony from a witness that the defendant was in jail, therefore, denying appellant his due process right to a fair trial.

2

IV. Defendant-appellant is entitled to a new trial when the errors presented here infringed upon the appellant's right under the Reasonable Doubt Clause.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished Opinion. Id.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. His application raised the same seven claims that he presented to the Michigan Court of Appeals. The Michigan Supreme Court denied the application for leave to appeal by form order. People v. Morrow, 485 Mich. 865 (2009) (table).

Petitioner then filed the present habeas petition, raising the same claims he presented to the state courts during his direct appeal.

Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An

3

"unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not

4

completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

Discussion

A.  Sufficiency of the Evidence

Petitioner's first claim asserts that insufficient evidence was presented at trial to sustain his conviction for second-degree murder.  He does not dispute the sufficiency of the evidence presented to establish his identity as the shooter.  Rather, he claims that the prosecutor did not prove that acted with malice. Respondent asserts that the the Michigan Court of Appeals reasonably rejected this claim during Petitioner's appeal of right.

Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential

5

elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis added). In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the fact-finder's verdict. United States v. Rayborn, 495 F.3d 328, 337-38 (6th Cir. 2007). A federal habeas court may not overturn a state court decision which rejects a sufficiency of the evidence claim, simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S.Ct. 2060, 2065 (2012).

Petitioner asserts that insufficient evidence was offered to show that he acted with malice when he shot the victim in the forehead with a handgun. Specifically, Petitioner claims that because the victim provoked him, he was only guilty of voluntary manslaughter.

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." People v. Smith, 478 Mich. 64, 70 (2007) (citing People v. Goecke, 457 Mich. 442, 464 (1998)). Malice, for purposes of second-degree murder, is "the intent to kill, the intent to cause great bodily harm, or the

6

intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." Goecke, 457 Mich. at 464 (citing People v. Aaron, 409 Mich. 672, 728 (1980)).

In order to show voluntary manslaughter, the defendant must (1) have killed in the heat of passion, (2) the passion was caused by adequate provocation, and (3) there was not a lapse of time during which a reasonable person could control his passions. People v. Mendoza, 468 Mich. 527, 535 (2003). "Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation . . . characterizes the offense of manslaughter [and] separates it from murder." People v. Pouncey, 437 Mich. 382, 388 (1991). Not every form of provocation, however, will suffice to negate the malice element of second degree murder. The provocation must be of the sort "which would cause the reasonable person to lose control . . . . The law cannot countenance the loss of self-control; rather, it must encourage people to control their passions." Id. at 389.

Viewed most favorably to the prosecution, the evidence showed that Petitioner shot the victim in the head with the intention of killing him because he had been punched in the face. Petitioner and others were playing basketball in a driveway when the victim, Ronald Guevara, arrived and joined them. At some point during the game a fight erupted between Guevara on one side and Petitioner and Carlos Flemister on the other. Petitioner and Flemister beat and kicked Guevara bloody, and then they retreated into the house with others while laughing and joking about how they had beat the victim. Inside the house, co-defendant Silvo Moreno produced a handgun and put it on top of a refrigerator. Petitioner retrieved the gun and put it in his waistband.

7

The men then went back outside onto the porch where neighbors were attempting to calm an enraged Guevara.  He yelled at the porch that he was "going to kill all these mother-fuckers" and "blow this bitch up and burn it down." Guevara then called friends on his cell phone. When Guevara's friends arrived, he yelled at the porch "now what you bitches going to do," and his group rushed the porch. A fight then erupted on the porch. During the fight, someone punched Petitioner in the face. While another man fought with that man, Petitioner stepped back into the house, pulled the gun from his waistband, pointed it with both hands, and shot Guevara in the forehead, killing him.

With respect to Petitioner's manslaughter defense, the question for the jury was whether the punch to the face was adequate provocation for the shooting.  Given the evidence presented, the jury could have reasonably answered that question either way. Their determination that the circumstances of the shooting did not constitute the sort of provocation which would cause a reasonable person to lose control did not fall "below the threshold of bare rationality." Coleman, 132 S.Ct. at 2065.  Petitioner has therefore not demonstrated entitlement to habeas relief with respect to this claim.


B. Ineffective Assistance of Counsel

Petitioner next asserts that he was denied the effective assistance of counsel when his trial attorney failed to request a jury instruction on imperfect self-defense and one informing the jury that Petitioner did not have a duty to retreat. This claim was rejected on the merits by the Michigan Court of Appeals during Petitioner's direct appeal.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. See Strickland v. Washington, 466 U.S.

8

668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. Id. at 687. These two components are mixed questions of law and fact. Id. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

With respect to the performance prong of the Strickland test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. See id. at 689; see also O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

As the Supreme Court has recently explained, Strickland establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of Strickland:

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S.   ,   , 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at —. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 131 S. Ct. at 788.

With respect to Petitioner's proffered imperfect self defense theory, he was not prejudiced by his counsel's failure to raise the claim because the defense is no longer recognized under Michigan law. Recently, the Michigan Supreme Court has held that the doctrine of imperfect self-defense is not available as "a freestanding defense that mitigates a murder to manslaughter because it was not recognized as such under the common law at the time the Legislature codified the crimes of murder and manslaughter." People v.

Reese, 491 Mich. 127, 150  (2012).

In Lockhart v. Fretwell, 506 U.S. 364, 366 (1993), the United States Supreme Court held that when a lawyer fails to raise "an objection that would have been supported by a decision which subsequently was overruled," a defendant cannot show that he was prejudiced for purposes of the Strickland test. In such a case, it is improper for a reviewing court to focus on "mere outcome determination," because the result of the proceeding was not fundamentally unfair or unreliable. Id. at 369. The Supreme Court concluded that "[T]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Id. at 369-370 (citing United States v. Cronic, 466 U.S. 648, 658 (1984)).

Petitioner is no longer entitled under Michigan law to raise a defense of imperfect self-defense. Therefore, to grant Petitioner a new trial based upon trial counsel's failure to request an instruction on imperfect self-defense would grant him a windfall to which he is not entitled.[1]

Petitioner also argues that his counsel was ineffective for failing to request a jury instruction informing the jury that Petitioner did not have a duty to retreat.  The Michigan Court of Appeals rejected the claim as follows:

> Defendant asserts that the shooting of Guevara was justified because defendant was acting in defense of himself and of others. Defendant again cites to the fact that Guevara initiated the second altercation by charging defendant and others on the enclosed porch, joined by acquaintances that had come to his aid. However, these facts do not set forth a justification for the use of deadly force. There was no testimony that Guevara or his

_____

[1]Petitioner's fourth claim bluntly asserts that he has a right to a new trial because he is "entitled to an imperfect-self defense."  This claim fails for the same reason.  Imperfect self-defense is no longer recognized under Michigan law.

acquaintances were armed. There is no evidence that defendant honestly and reasonably believed that he, or someone else, was in imminent danger of death or great bodily harm such that the use of deadly force was necessary. Rather, during the course of an ordinary fight, defendant introduced a weapon into the altercation and fired a bullet into Guevara's head. Deadly force was not an appropriate avenue where there was never a significant threat to the life or health of any of the parties involved in the altercation.

*      *      *

Defendant next asserts that his trial counsel was ineffective where he failed to request an instruction on self-defense and an instruction regarding defendant's right to maintain his ground without fleeing. We disagree. Defendant's claim that he was denied effective assistance of counsel presents a mixed question of fact and constitutional law. People v. Leblanc, 465 Mich. 575, 579 (2002). While the trial court's factual findings are reviewed for clear error, the questions of constitutional law are reviewed de novo. Id. Because defendant failed to preserve this issue, this Court is limited to reviewing errors that are evident on the record. People v. Matuszak, 263 Mich. App. 42, 48 (2004).

In order to prevail on his claim of ineffective assistance, defendant must establish that his trial attorney's assistance "fell below an objective standard of reasonableness and that this was so prejudicial to him that he was denied a fair trial." People v. Toma, 462 Mich. 281, 302 (2000).  There is a strong presumption that defense counsel's actions were sound trial strategy. Id. In order to demonstrate prejudice, defendant must establish that there is a reasonable probability that, but for mistakes of his attorney, the result of the trial would have been different. People v. Mitchell, 454 Mich. 145, 167 (1997). The United States Supreme Court has further stated that the proper inquiry is whether, as a result of counsel's performance, the outcome of the trial was fundamentally unfair, unreliable or prejudicial. Lockhart v. Fretwell, 506 U.S 364, 369 (1993).

As discussed above, this Court has concluded that the theory of self-defense was not applicable to the facts of this case where defendant failed to show that he had a reasonable belief that his life or health was at risk when he shot Guevara. Defense counsel is not ineffective where he chooses to not pursue a meritless position. People v. Goodin, 257 Mich. App. 425, 433 (2003); People v. Snider, 239 Mich. App. 393, 425 (2000). Defendant was therefore not denied the effective assistance of counsel by his attorney's decision not to present an argument that would not have succeeded.

Morrow, 2009 Mich. App. LEXIS 708, at *5-9.

12

The Michigan Court of Appeals concluded that a self defense theory was not supported by the evidence, and thus that the instruction was not warranted by state law. In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court. See Basile v. Bowersox, 125 F. Supp. 2d 930, 960 (E.D. Mo.1999). Therefore, any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. See Bradley v. Birkett, 192 F. App'x 468, 475 (6th Cir.2006). Accordingly, Petitioner is not entitled to habeas relief on this claim.

C. Admission of Gruesome Photographs

Petitioner asserts that the admission of photographs of the victim's body at the crime scene rendered his trial unfair.  The claim is without merit.

"Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994). "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." Ege v. Yukins, 485 F.3d 364, 375 (6th Cir. 2007) (quoting Brown v. O'Dea, 227 F.3d 642, 645 (6th Cir. 2000)). See also Frazier v. Huffman, 343 F.3d 780, 789-98 (6th Cir. 2003) (holding that state court's admission  of photographs of victim's corpse during a murder trial was not an unreasonable application of federal law and did not warrant habeas relief, because the photographs were used to illustrate the coroner's testimony and the nature of the encounter that preceded the victim's death.).

The photographs in this case were used to illustrate the victim's injuries, which was

13

a relevant aspect of the charged crime of second-degree murder to show Petitioner's intent. The admission of the photographs was thus relevant to the government's case, and did not "so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly, 25 F.3d at 370.

## D.  Jury Misconduct and Instructions

Petitioner's fifth claim asserts that he was denied a fair trial when members of the victim's family were seen talking to members of the jury before deliberations.  Petitioner also asserts that the trial court failed to instruct the jury about the reliability of testimony given by drug users and co-conspirators. These claims were raised in Petitioner's pro se brief during his direct appeal.

The Michigan Court of Appeals rejected the first portion of the claim as follows:

> Defendant next asserts that the trial court erred in failing to hold an evidentiary hearing to address potential juror misconduct. We disagree. This Court reviews unpreserved issues for plain error affecting the substantial rights of the defendant. Carines, supra at 763-764.

> Defendant asserts that two separate instances of misconduct occurred. First, defendant states that Guevara's family members had improper contact with the jury. In support of his claim, defendant attaches the affidavit of Bryan Stephens to his standard 4 brief. It is not clear who Bryan Stephens is. In the affidavit, Stevens claims to have knowledge of an alleged conversation between four jurors and Guevara's mother about a television show viewed by one of the jurors that apparently related to or addressed Guevara's murder. As this Court has previously held, a party may not expand the record on appeal. People v. Williams, 241 Mich.App. 519, 524 n 1 (2000). As a result, we will not consider the Stephens affidavit in analyzing this issue as that affidavit was not a part of the lower court record.

> Where a defendant alleges that an extrinsic force unduly influenced a jury, he must establish that the jury was exposed to the force in question and that the force likely had an affect on the jury's verdict. People v. Budzyn, 456 Mich. 77, 88-89 (1997). If the defendant makes those showings, the

14

burden shifts to the prosecution, which has the task of showing that the error was harmless beyond a reasonable doubt. Id. at 89. The prosecution can successfully show the error was harmless by showing that there was overwhelming evidence of the defendant's guilt. Id. Even if defendant could show that there was an improper influence on the jury, there was overwhelming evidence of defendant's guilt presented at trial. Particularly strong was the eyewitness testimony of Joseph Hopkins that he observed defendant shoot Guevara. Additionally, Flemister told police that, immediately after he heard the gunshot, he saw defendant holding a gun, and he testified at trial that after the shooting, defendant said that he was going to prison because he had just "murdered somebody." Flemister also testified that he did not see anyone else with a gun around the time of the shooting. Another witness, Anthony Mendez, testified that, immediately after he heard the gunshot, he saw defendant holding a gun. Defendant did not present any evidence to rebut this testimony, and there was no evidence presented that anyone other than defendant possessed a gun at the time of the shooting. Thus, considering this overwhelming evidence of defendant's guilt, any alleged improper influence on the jury was necessarily harmless. Id.

Morrow, 2009 Mich. App. LEXIS 708, at *14-16.

In essence, the state court held that there was no record evidence before it to support Petitioner's claim. It found that, under state law, it could not consider the affidavit Petitioner attached to his pro se brief to expand the record. The Court found in the alternative that any alleged error was harmless in light of the overwhelming evidence of Petitioner's guilt.

This Court may not consider the affidavit that was deemed improperly filed by the state courts. The Supreme Court has recently made clear that 28 U.S.C. § 2254(e)(2) "'imposes a limitation on the discretion of federal habeas courts to take new evidence.'" Sheppard v. Bagley, 657 F.3d 338 (6th Cir. 2011) (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1400-01 (2011)). Petitioner had an adequate opportunity in the state courts to develop the record to the extent necessary to support this claim, but he failed to do so. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 9 (1992). "'[F]ederal courts sitting in habeas are not

an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Id. (quoting Pinholster, 131 S. Ct. at 1401). Because Petitioner did not properly move to expand the record to support his claim in the state courts, this Court is likewise bound by the existing trial court record which does not support his claim.

In any event, as the state court found, Petitioner has not demonstrated that the alleged contact with the jurors resulted in prejudice. In Remmer v. United States, 347 U.S. 227, 229, (1954), the Supreme Court held that any "private communication, contact or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is considered to be 'presumptively prejudicial.'" Therefore, a trial court confronted with an allegation of external tampering or contact with a juror during a trial about a matter pending before the jury "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." Id. at p. 229-30. Remmer placed the burden on the prosecution to rebut the presumption that an extrinsic influence upon the jury prejudiced the defense. However, in Smith v. Phillips, 455 U.S. 209 (1982), the Supreme Court subsequently stated,"[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Id. at 215. In the aftermath of Smith v. Phillips, the Sixth Circuit "has consistently held that Smith v. Phillips reinterpreted Remmer to shift the burden of showing bias to the defendant rather than placing a heavy burden on the government to show that an unauthorized contact was harmless." United States v. Walker, 1 F.3d 423, 431 (6th Cir. 1993) (collecting cases).

Here, Petitioner never brought the alleged contact between members of the victim's

16

family and jurors to the attention of the trial court, so no <u>Remmer</u> hearing was conducted to determine if the contact took place or what effect it had on the jury. Nevertheless, it is Petitioner's burden to prove that the alleged contact actually affected the jury. For the reasons stated by the Michigan Court of Appeals, he has not done so.

The second portion of Petitioner's fifth claim asserts that the trial court failed to instruct the jury on the unreliability of testimony given by drug users and co-conspirators. The Michigan Court of Appeals found that the alleged error was waived because defense counsel expressly approved of the jury instructions.

Because the Michigan Court of Appeals relied on counsel's expression of approval of the jury instructions as given to reject Petitioner's claim, the issue is procedurally defaulted. See <u>McKissic v. Birkett</u>, 200 Fed. Appx. 463, 471 (6th Cir. 2006).

A procedural default is "a critical failure to comply with state procedural law." <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997). Such a default may occur if the state prisoner fails to present an issue to a state appellate court at his only opportunity to do so, <u>Rust v. Zent</u>, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., make a contemporaneous objection or file a motion for a directed verdict, see <u>Simpson v. Sparkman</u>, 94 F.3d 199, 202-03 (6th Cir. 1996). Procedural default will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750.

The failure to make a contemporaneous objection or request is a recognized and firmly-established independent and adequate state law ground for refusing to review trial

errors. See People v. Carines, 460 Mich. 750, 762-63 (1999); see also Coleman, 501 U.S. at 750-51 (same). In this case, the Michigan Court of Appeals denied relief based on the petitioner's acceptance of the jury instructions, i.e., his failure to object to those instructions at trial.

"The Court may review a prisoner's procedurally defaulted claims on the merits only if he shows cause for not raising his claims at all levels of state court review and prejudice, or that he is actually innocent of the crimes for which he was convicted." Gray v. Netherland, 518 U.S. 152, 162 (1996); Murray v. Carrier, 477 U.S. 478, 496 (1986).

Here, Petitioner cannot establish prejudice because the jury instructions did not render the trial fundamentally unfair. Generally, challenges to jury instructions are not cognizable on federal habeas review unless the instruction "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citation and quotation marks omitted). It is not enough to show that an instruction was incorrect under state law. Id. at 71-72. "To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." Doan v. Carter, 548 F.3d 449, 455 (6th Cir. 2008) (citations omitted). "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'" Id. at 455 (quoting Victor v. Nebraska, 511 U.S. 1, 6 (1994)).

The jury was instructed on how to evaluate the credibility of the witnesses. They were told to rely on their own common sense and everyday experience. They were instructed that there were no fixed rules, but they could consider the witnesses' demeanor while testifying, whether anything might have distracted them while they made their

18

observations, any threats or promises made to them to testify, or any special reason they might have to tell the truth or lie.  These instructions adequately informed the jury that they could consider the effects of drug use or interests a co-conspirator had while testifying. Accordingly, Petitioner has not shown that he was prejudiced by the failure of the trial court to give more explicit instructions.

Petitioner's fifth claim therefore does not warrant habeas relief.


E.  Evidence that Petitioner was Previously Incarcerated

Petitioner's sixth claim asserts that the prosecutor erroneously elicited evidence that Petitioner had previously been incarcerated.  The Michigan Court of Appeals agreed, but it found that the error was harmless:

> Additionally, defendant asserts the prosecutor improperly elicited testimony regarding defendant's prior incarceration. We agree. However, because the error did not affect defendant's substantial rights, he is not entitled to relief. Carines, supra at 763-764.

> "References to a defendant's prior incarceration are, unless specifically ruled otherwise, generally inadmissible." People v. Spencer, 130 Mich. App. 527, 537 (1983). Because the evidence of defendant's prior incarceration was not relevant at trial, it was improper for the prosecution to elicit that testimony. However, we conclude that defendant was not prejudiced by the error because it did not affect the outcome of the trial. When asked how long he had known the defendant Flemister indicated that he met the defendant "months ago" while they were "locked up together." Following this testimony, the prosecution made no further mention of defendant's prior incarceration. This Court is not persuaded that the isolated reference to defendant's prior incarceration resulted in his conviction, particularly considering the eyewitness testimony of Hopkins, who observed defendant shoot Guevara. Furthermore, Flemister signed a statement in which he alleged that defendant told him he was going to jail for life because he murdered someone. This evidence, which was frequently referenced at trial, was likely far more influential on the deliberating jury than the brief passing mention of defendant's previous incarceration. Therefore, defendant cannot establish that he is entitled to relief on the basis of this unpreserved

19

error.

Morrow, 2009 Mich. App. LEXIS 708, at *18-19.

On habeas review, a court must assess harmlessness under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. Fry v. Pliler, 551 U.S. 112, 121-22 (2007); see also Vasquez v. Jones, 496 F.3d 564, 574-75 (6th Cir. 2007). Under this standard, habeas relief cannot be granted unless the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. Brecht, 507 U.S. at 638. Here, given the overwhelming evidence of Petitioner's guilt along with the fact that testimony that Petitioner had been previously incarcerated was isolated, the Court concludes that any error was harmless.


F.  Cumulative Error

Petitioner's final claim asserts that the cumulative effect of the errors committed at his trial violated his rights under the "Reasonable Doubt Clause."  The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005). Therefore, Petitioner is not entitled to habeas relief on the grounds of cumulative error.


Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of

20

appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473 (2000). The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.  The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because any appeal of this decision would be frivolous.

Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and permission to proceed on appeal in forma pauperis.

**SO ORDERED.**


s/Marianne O. Battani
Honorable Marianne O. Battani
United States District Judge

Dated: November 28, 2012

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon the Petitioner Leon James Morrow via ordinary U.S. Mail, and Counsel for the Respondent via the Court's ECF Filing System.

s/Bernadette M. Thebolt
Case Manager